Our next case is Google v. Sonos, 2024-1097. Mr. Rosencrantz, please wait until your fellow counsel are seated. Please proceed. Thank you, Your Honor. Good morning. May it please the Court. Josh Rosencrantz, representing Sonos. Your Honors, the District Court took a doctrine that this Court has cautioned must be sparingly applied and stretched it to endanger standard continuation practice. If this Court sustains this approach, it will fundamentally alter the norms of both patent prosecution and patent litigation. Now, we say that for three basic reasons, and there are three undisputed facts that undermine laches here. The first is that the District Court found that Sonos, quote, diligently prosecuted patent applications in this family. That's at A81. Second, more than half the delay of this prosecution, seven years, was attributable to the PTO. So we're talking about a six-year delay. Third is the fact, a fact, the District Court completely ignored. Sonos already had broader claims that covered all zone scenes without regard to whether they were overlapping or not, well before it launched, well before Google launched its products. Now, missing from this case are any of the shenanigans that usually accompany, and I would say have always accompanied, prosecution laches. We never abandoned any application in the priority change, and we did not bury the patent office in tens of thousands of duplicative. Can I just ask you a very simplistic question, which is, because maybe I'm misunderstanding or missing something. Just in terms of what the District Court found, I know you have to, both, each side has to win on both issues. But where is the prejudice, given the court's findings and conclusions with respect to, I don't know whether we're calling it anticipation or written description or new matter or whatever. How could there have been, how could he have concluded there was prejudice under prong two if, in fact, based on his conclusions on anticipation, Google was not going to be liable for any money and there was no prejudice? So I'm just, this is just at a very high level. Isn't there tension between, whether they're both right or both wrong, isn't there tension between the two? There is a fundamental tension, Your Honor, just to state it in a slightly different way. If these claims were, if there was no written description and these claims were anticipated, there is no patent and we can't be held liable for a 13-year delay in prosecuting claims that were not supported by the written description. But I also want to underscore another point about prejudice that the District Court found. And that is this whole prejudice concept, the prejudice for Google, is totally made up. Google had no witness who got on the stand and said that they were caught unaware. Google had no witness on any aspect of prosecution latches. Google conceded that its invention, excuse me, that its product planning did not begin until 2015. Google can't dispute that by 2014, we had the patent that I mentioned earlier, 228, covering all zone scenes. Plus, in 2013 and 2014, we laid out all of our technology to Google. It was on notice of all of our technology, including zone scenes. And Sonos warned Google that it was infringing Sonos's patents right after Google eventually, by surprise, came out with its products. And that was in 2016 that we issued that warning. Can I go back to just, can we start on the, though, on the invalidity anticipation? Because that seems problematic, at least how it affects prosecution latches and maybe beyond that. You make a waiver argument, your first argument is a waiver argument. There's a slight difference between waiver and forfeiture. And the other side's response is that the judge can kind of sua sponte, it's his prerogative to sua sponte, reconsider the decision he had made on summary judgment. So what's the problem with that? Can't he do that during the trial when more information comes in? Does he have the prerogative, unreviewable prerogative, to just decide to reconsider his decision? Well, so two things about that, Your Honor. The judge never decided on summary judgment, this new matter question. Google had not even thought of that until the middle of trial. And Google said, oh, Your Honor, we hadn't thought of that until you raised it. What I can't figure out is what came before the district judge that, shall we say, caught his ire? What was it? So, Your Honor, what happened was our inventor was on the stand, and the judge actually, Judge Elsa spells this out, he did not realize until our inventor was on the stand that the crux of the invention of the claims that we were asserting was the overlap piece. And then he started asking questions about what is the written description support, to which we responded to your question, Judge Prost, wait a minute, you already, sorry, you decided summary judgment. Google had the opportunity to raise the issue as a factual matter because it was Google's summary judgment motion, not ours. Here's the other that's not clear to me. When the court denied summary judgment on written description, did the court deny summary judgment because there was a factual issue, which is usually there is with written description, or did the judge rule as a matter of law that the written description was adequate? Well, what is it that the judge ruled? Because I can't figure it out. And I think that that matters to the waiver argument, or I think it's forfeiture. Yes, I agree it's forfeiture. So the only issue before the court, the only motion before the court was Google's summary judgment motion. The only thing the court did when it denied Google's summary judgment motion was to free Google to try the case if that's what it wanted to do. Now, sorry, just to finish the answer, he did say things that made it seem like he thought there was adequate written description support. And that's why I'm asking the question because so was there any effort on the part of any counsel to seek clarification as to what the court had ruled? Because when I look at the court's order, it is not clear. It seems to sort of say both. There's an issue of fact that I find is a matter of law that the written description is adequate. And I think that that is very relevant as to what the forfeiture argument, whether it has legs or not. Do you agree with that? I disagree for one reason, Your Honor, and that is one thing the district court did not rule on was new matter. And if Google had a new matter argument, which it hadn't thought of, it was certainly free to raise that. But the second answer is this court's precedents are very clear that the denial of a summary judgment motion, without regard to what the judge says as the basis for the denial, at least in the factual written description context, the denial only does that. It denies summary judgment to one side. The confusing thing in the record, and I understand Judge Baum's confusion, I think I may have figured it out so you can confirm or deny. The reason it's confusing is because of the shootout thing. And so it was actually Sonos' motion for summary judgment. So even though they denied Google's counter to that, it's defense of that. It's defense of the infringement summary judgment. And so what they say, like it read page 44, it says correctly the court granted summary judgment to Sonos. But that's only because the context of this issue came out as a shootout issue. Your Honor, Judge Alsup's shootout procedure does not change the Federal rules of civil procedure. I'm not disagreeing.  Google had a motion for summary judgment. Google's motion was denied. It wasn't our motion that was granted. If Google wanted to present new matter, which it said to the district court is not an issue in this trial, if Google wanted to present new matter, it could have sought clarification. It was clear to us. And Google could not have appealed that summary judgment, excuse me, the denial of summary judgment without going to trial and trying to try its case. I will also add this whole written description question is a question that is full of fact issues. And the district court's decision to decide that issue after a trial that was not geared to written description or to new matter without even giving us a chance to put on our witnesses on written description or to develop witnesses on new matter. Okay, so that begs the question of what we do with that, assuming hypothetically that we accept a lot of what you're saying. We remand it for a new trial. I mean, we could find forfeiture and find whatever. But you also, I think you accept the possibility. I think that's one of the options you put forward in your brief, that we could remand it for a new trial on the written description issue. So let me just be clear. That was our last point at a minimum that it should be a new trial. But no, judges don't get to decide how a defendant is going to prosecute or patent infringer that is accused is going to prosecute its defenses. Google never put the new matter issue in the case. If Google had tried to do it without the judge's intervention in the middle of trial, it couldn't have done it. If Google had tried to do it without a 50A motion, it couldn't have done it. The rules are no different just because the judge came up with the theory on his own. So the result should be that this Court vacates the district court's order and reverses at least and sends it back to the district court to decide the new trial motions and the post-trial motions, because there is no live issue before the district court on new matter. I see you're puzzled. I understand what you're saying, but let's assume... The question is what we do then with the latches and what the question... There will be different questions with regard to the prosecution latches. It's a different case, as I said. I think, just me, that what the district court did in finding that there was a real written description problem, avoids the prejudice. So that affects latches.  But if we get rid of his conclusions with respect to anticipation and we say the patent was valid, then it's a different analysis on latches, and we have to send it back, therefore, to the judge to reconsider the latches conclusion? So I would say no, Your Honor. At a minimum, the district court would have to reconsider latches in light of this court's conclusion about written description. In other words, if we had a right to try written description, for example, the district court would have to reconsider latches without that rationale. The district court would still have the first 25 pages of its opinion. This court does not have to send it back for the district court to assess the new matter issue if this court concludes the latches analysis was legally wrong just on its face without regard to the written description and new matter point. And that was the point I was... And I see I'm deep into my rebuttal time. Well, we'll give you more time if you need it. Have you concluded your... The analysis we would have to do on evaluating latches, assuming we don't buy the first line, which is latches can never apply if there's no extension of the patent grant. Assuming that's it, it's a different latches analysis, is it not, in terms of the prejudice? I mean, we've got... Then we've got 13 years. If it's anticipated there's written description, there's no 13 years. Right. So, Your Honor, this court can still decide the latches question, putting aside the new matter point on legal grounds. For example, the prejudice point. 13 years was 6 years. I just... Every time counsel for Google says 13 years, I would just remind the court that 7 years of the... 7 years of that was for the issuance. As a matter of law, do we consider, because I don't think there's any law saying this, that does it matter that in 2007... Or in 2013 this became public, so Google was on notice before 2014? Yes. But drawing lines, there's no requirement that the patent owner make something public. So I'm a little hedgy on making that be an important factor. I'm sorry. The reason I say it's important is because in 2013 was 2 years before Google started even planning its infringing activity. Google's argument is the prejudice was, oh my goodness, we were caught off guard because we didn't know that this patent protection existed. It knew. It had our patents. It was aware of the entire technology and our role in it. And if Google wants to claim prejudice, it had to put a witness on it that said, oh my goodness, we didn't read the patent that way, even though it provides a written description in five different ways. Oh my goodness, we had no idea that this was going to come and bite us. Or oh my goodness, even though the 2014 patent, the 228 patent, covers all zone scenes, we thought it was invalid. Google had no witness that said any of that. So just on the prejudice prong, this Court can reverse without even thinking about new matter. Thank you, Mr. Rosenkranz. We'll give you your full rebuttal time in a few minutes. I'm going to give you a little extra time if you need it to. Thank you, Your Honor. Dan Bagatelle on behalf of Google. With me are Nate Kelly and Iman Lord-Greene. I had intended to start with prosecutional adjudicates, and I'm willing to do that if Your Honors would like me to start there. But if you'd like me to switch to anticipation first, I'll do that. I'll take the guidance from the Court. Why don't we go to anticipation? Sure. Anticipation comes into play if you don't affirm on prosecutional adjudicates, because you can affirm on either ground. If you do reach anticipation, please submit that you should affirm. The question is whether there was description of the overlapping zone scenes phenomenon in the 2006 or 2007 application. Well, there are several questions. One is whether or not it was waived. I'll address that right away. It was not waived. First of all, Sonos is wrong. This issue came up on Sonos' motion for summary judgment. I know, but it was kind of funky, right? Because it was summary judgment. That's because of the way the shootout worked. You did summary judgment of infringement. So it's kind of a technicality that it came out on summary judgment. There were actually two papers. There were cross motions, but Sonos had a motion for infringement. We responded. It's at page 4890. Opposition to Sonos' motion for summary judgment. One of the issues was there can be no infringement because claim one of the 85 patent lacks written description support. So we got one brief, and then they came back with a reply. It was not briefed in conjunction with our motion. It was briefed in conjunction with Sonos' motion. I know, but the court rejected it. The court rejected your assertion of invalidity. There's no doubt about that. And therefore, wasn't it up to you to pursue that at trial? No. Why? Can you tell us why? Because he granted summary judgment to Sonos over our... On infringement. On infringement, which included our affirmative defense to infringement. He said the description was adequate. Where did he say that? Because in the brief, in your brief, you say that the parties were ordered not to present this issue to the jury. And I really am having a hard time figuring out... What was ordered not to present the jury is when he re-raised it at trial after hearing, saying, gosh, this really is all about overlapping zone scenes, and this seems awfully thin. I want you to brief it some more. He heard the arguments, and he said, you know, we're trying a different case, and so I don't want to hear about it now. I want you to brief it, but I'm going to decide it after trial. So he said, don't put it on in front of the jury, because this is an issue I want to address after trial. We have two things going on. Cindy, can you answer the first question? We have to find Judge Alsup's order. He said that the written description was adequate. I have to find the page for that. Let me do that. He said the written description was adequate. So did Google take that, that he ruled as a matter of law that the written description was adequate, and therefore there were no findings of fact or deceit of fact that had to go to the jury? Is that how Google interpreted it? Right, because he had affirmatively decided that this paragraph of column 10 has an adequate description of overlapping zone scenes. How can there be such a disconnect between the two parties? You've got Sono standing before us saying, oh, no, he ruled that it was a disputed issue of fact, and you've got Google standing before us saying, oh, no, it's kind of extraordinary. No, no, he never said it was a disputed issue of fact. He said it was an adequate disclosure. Google lost. And the question is, why didn't you appeal it? Or at least you lost. It's a factual dispute. At least we want to take it to the jury. No, what he said was that the written description was adequate. And so we accepted that ruling and reserved the right to appeal. Obviously, we couldn't appeal then. It was an interlocutory decision. It seems to me that there is a fundamental disagreement as to what Judge Elson did. Because Sonos is saying that he found that it was a disputed issue of fact presented to the jury. Google says, nope, he found it as a matter of law that the written description was adequate. And they lost and didn't present it to the jury. That is a fundamental disconnect between how this case was located. And so, therefore, from there flows the issue of forfeiture. Two points. The judge never said it was a genuine issue of material fact. He said the disclosure was adequate. Now, moreover, at trial, he said, I know I granted summary judgment, but I'm raising it again. So he recognized at trial and after trial that he had granted summary judgment in Sonos' favor. That's in the order that's on appeal right now. At the very end, he says, I'm going to vacate that ruling. But when he recognizes, yeah, I recognize there's a problem here, and I decide it, at that point, shouldn't there be a trial? Because written description is a question of fact. And did he not make fact findings with respect to written description? Your brief suggests that he made fact findings with respect to prosecution latches. And that's okay, because that's an equitable defense, bench trial stuff. But I think there are a lot of findings here. He even calls them findings in some instances. Well, I think what he was making findings in connection with the prosecution latches, as you say, he was making findings of fact and conclusions of law. And you don't think he was making any findings? I think, in fact, it was a 56-F situation when he was raising summary judgment motion on his own. That's what he said during the trial was that I'm having concerns about my earlier motion. And Sonos says, well, you already decided that issue. He said, I know, but I'm raising it. And they said, fine, we'll brief it. And then he said, after seeing how complicated it was, he said, you know, we're going to deal with this after trial. And I think what happened then, it was not tried to the jury. It became effectively a summary judgment motion raised by the judge, which he's entitled to do under 56-F. Did he cite 56-F? Did he cite any rule? I don't think he cited it. But he said, I'm entitled to raise it on my own. And there was certainly plenty of notice and opportunity to respond. There were 100 pages of briefing from Sonos, 1,000 pages of exhibits, five oral arguments. Which included preservation of the waiver issue, that he shouldn't decide it because of waiver. Well, they argued that it was waived, and he disagreed, first of all. First, he did not find waiver. Second of all, there can be no waiver when the judge decides an issue. I'm sorry to keep you. I couldn't find anything in terms of an analysis of why it wasn't waived or waived. You're right. He obviously concluded it wasn't waived because he went on and decided it. But is there anything I'm missing? Did he analyze or say why it wasn't waived? I don't recall him specifically saying so. But it's in the court's discretion to determine waiver. In any event, he said, I'm raising this on my own motion, even though I decided it before. I'm reconsidering my summary judgment ruling. That's the way he characterized it. And so first of all, we don't think we were entitled to try anything after we had summary judgment against us. Second of all, he reconsidered on his own motion. Third of all, any time that the court actually decides something, waiver is gone. I mean, waiver is no longer an issue once a judge decides to address the merits. And we don't get to review whether or not waiver applies? I mean, it's solely in the discretion of the judge as to whether or not it was waived or not. And once he proceeds to decide. I suppose you could have a crazy abuse of discretion in some circumstance. But this was something where the judge heard testimony and said, I think it's then. I'm sorry to keep interrupting you, but time is limited. Let's go back to the fact issue.  So what he decided, I think he even called them findings. When he took up after briefing the question of written description, it seems to me that his analysis includes factual findings. I agree in that I think the question then is, was he entitled to grant summary judgment? Was there a genuine dispute of material fact regarding whether Sonos disclosed overlapping zone scenes? That's under the standard, under 112, which is, of course, a clear disclosure. And your view is that there was no genuine dispute? There were bits and pieces here and there that mostly talked about zone scenes and that you can set them up in various ways. But none of them talked about overlapping zone scenes. They're trying to grab snippets here or there. So are you saying that there was no genuine dispute of fact? In other words, are you saying that? Yes. I don't think there was any genuine dispute. Which would mean that we could decide the issue, too, then? You could decide the issue. Based on the paper record. You could. And I think, as one, if I can remember who, mentioned, that if you decide that there was a genuine dispute of material fact on that issue, you could vacate and remand for further analysis or a trial if necessary. If we remand, do we have to reach the prosecution on this issue? I think you should. Do we? Because I think you do. Because the issue, the judge's decision was primarily on the equal defense of prosecution latches. And one of the elements of it was, of course, unreasonable, unexplained delay and prejudice. And one of the elements of the unreasonable delay was the fact that it was not only a failure to claim, but also even a failure to disclose for all that long period. So that was part of his prosecution latches analysis. But doesn't the result of the analysis on written description inform the analysis on prosecution latches? In other words, what I asked Mr. Rosencrantz's first question, isn't there a contradiction in what the court did here in finding that the patent, the claim goes down, it's invalid, there was new matter added, and then claiming prejudice where, given his conclusion, there is no prejudice to Google because Google wins and there's no infringement. Well, I think there are actually, you can have multiple sort of overlapping defenses. You can have a defense of 101 and 103. Yeah, but if one goes down, one might go the other way. Well, I would agree that if you affirmed on prosecution latches, then you can vacate. No, let's assume we affirmed on written description. Okay. Where are you on the prejudice problem of the latches? I mean, if you affirm on no anticipation, then the patent is dead. I agree with that. Yes. Then it doesn't matter. But what the judge did was the patent is dead, and I'm going to find prosecution latches and prejudice. Right. How could there be prejudice if the patent is dead? Well, I understand what you're saying, and I think he was sort of making some alternative analyses that one, two reasons. No, two inconsistent analyses. Okay. How do they live together? Well, I think the way he was analyzing it. Yes, ma'am. No, I think at the end of the day, if you affirm on anticipation, you could vacate the prosecution latches ruling. It wouldn't have to stand. I think what the judge was doing when he was analyzing prejudice was analyzing the traditional prejudice under prosecution latches, which is essentially intervening rights, as this court has looked at it. And there was certainly no question that Google had to come up with this idea in 2013, told Sonos about it in 2014, begun selling the product in 2015. But there's no prejudice to any of that conduct if the claim is anticipated. Right. So the two, I think, are – do you disagree that the two are not reconcilable? I think if at the end of the day you agree with the anticipation analysis, then you can vacate the prosecution latches conclusion. And I think what you mean to say is that what trial courts like to do is to rule in the alternative. Yes. Because if they're wrong on one, they might be right on the other. Yes. Isn't that what Judge Alsup was doing? I think, yes. I think he was primarily addressing prosecution latches. And then when he got to the end of the analysis, I think he concluded that – For good measure, let me get to – Well, it was not just for good measure. This has been something that had been argued over and over again. It wasn't drawn out of – I mean, it was the focus of the oral argument on the prosecution latches motion. So our point with the prosecution latches is that this isn't one of the run-of-the-mill 10-year prosecution cases. We've never suggested – Can I just – before you get to that, I'm just – because I was really following up on Judge Bum's question about why – how we could decide prosecution latches if we still think there's an open question that requires a jury trial on written description. Because the result of that might affect it.  For instance, if the jury concluded and the – and there was no jail or whatever. Let me just point out that the converse is also true. If you find prosecution latches, you don't need to reach anticipation because this case is over. Well, if we find – It's unenforceable. In order to consider prosecution latches, don't we have to conclude – don't we have to decide whether or not there was prejudice? And if, in fact, the written description comes out your way, there's no prejudice. So it doesn't have – Well, I think – I mean, I guess we can do whatever we want. But it really does – it makes sense to do it one way or the other. I think we've given the example of how you get to prosecution latches is that which anticipates – that which infringes later anticipates it earlier. You sort of assume what the party is arguing. And if Sonis is arguing that, you know, in this case with respect to global infringing, then you can assume that for purposes of anticipation. So there are times when the court takes one, puts a stake in the stand, and then analyzes the other doctrine. So I think you can do that with prosecution latches. But, okay, wouldn't it make some sense to do what Judge Bum was at least suggesting, which is to resolve the written description – If you think you can resolve – One way or the other in order to inform the prosecution latches. If you think you can resolve written description as a matter of fact, then in either direction. I certainly submit that you can't, you know, say that it was summary judgment for Sonis. That was not a clear description of overlapping Zoom scenes. But if you resolve it in our favor, the case is over. If you resolve it in their favor, that it goes back. I think you can still say the judge was entitled to make findings of fact on disputed issues for purposes of prosecution latches. And he did. I think he was making findings. That was a subsidiary issue. It was part of the entirety of the undue delay and prejudice, especially the undue and unexplained delay involved the delay in both claiming and disclosing overlapping Zoom scenes. And he's entitled to make those decisions at a bench trial. He didn't contradict any jury verdict. There was no jury verdict on that point. Just on the latches question, kind of following up on some of Mr. Rosenkranz's arguments. I mean, 13 years, a large portion of which was consumed by prosecution by the PTO and not by his client. And no extension of the patent terms. And how is this not kind of – I don't want to use the word run of the mill because there's no such thing as run of the mill. But this is a continuation practice. It's not a continuation in part. It's a continuation practice. How is that so unreasonable in the extreme to establish? Let me just as a threshold matter dispute the seven years is all on the PTO. That's not true. That was seven years until the issuance of the first patent. They didn't get a seven-year term extension. It was all on the PTO. So, yes, I think there was a term extension of three in some years that some of that was due to the PTO. But some of it – I mean, Sonos took a delay in, you know, filing the first application in 2007. Sonos filed – we were on this, I think, the fifth and sixth or sixth and seventh applications by the time we got to 2019. And so Sonos took a long time. They didn't – they certainly could have claimed overlapping zone scenes if they thought their disclosure had covered it. They elected not to do it. So there's – we were not making micro-arguments that you were – you know, this particular office action was unduly delayed or something like that. But they came up with no excuse for it. Their only excuse was – What if we conclude that the judge was wrong on written description and, in fact, at least it goes back to the time when the 2007 provisional was – the public had notice of that in 2013? So that's before Google launched. So where's the prejudice in that scenario? Well, prejudice to us? Because they did not claim overlapping zone scenes until 2019, which was five years after we disclosed it to them and lots of other people, including Google. Well, no, let's assume that we don't agree with that conclusion with respect to the written description. This goes back to the part – No, no, no, no, no, no, no, no. I'm not saying – even if you say that they had sufficient disclosure, there's no dispute that they did not specifically call out overlapping zone scenes claims. They had some earlier patents that addressed zone scenes generally. Most of them were continuously rejected over a prior art that disclosed zone scenes as a concept, and they then added some limitations like display this or do that, a certain way of invocation, and they got these subset claims that were not claiming overlapping – excuse me, zone scenes per se. That's what they have. But they did not have claims that called out overlapping zone scenes until 2019. And by that point, they knew that the world had grown around it. They had an opportunity to claim it for 13 years, and they elected not to do so. I think the logical reason is they didn't see it in their own specification, but their subjective intent isn't critical to the fact. Well, but if there was adequate written description, if we disagree with you, forget what amendment happened in 2019. If it was adequate written description before 2019, like in 2007, the public had notice of that in 2013. Right. Why – that was before Google launched. It was before Google launched, but I think the question is there are cases in which applications have – you know, patents have been granted, and you still find prosecution latches. That just means that the specification is out there. You still – you don't get a free ride forever just because you had something in your original specification. You still have to diligently prosecute. And part of the analysis here is that Solos didn't just immediately prosecute claims to prosecution – to overlapping zone scenes. They didn't do it in 2007. They didn't do it in 2013, 14, 15, 16, 17, 18, 19. They took 13 years before they even presented claims on that point. I'm exhausted. We'll be patient. Okay. Why do you seem so eager for us to make a finding on prosecution latches? Don't we run the risk of opening up floodgates on this issue? I don't think so because of the rather unusual facts here. Is that what you really hang your hat on, that this case is so unusual? No, no. I think this case is highly unusual. Every one of these prosecution latches cases is unusual. There was some remark, I think, in one of the amicus briefs that there are, you know, 10,000 or whatever, tens of thousands of patents that have issued after 10 years. We're not saying that every patent that issues after 10 years is unenforceable. At that point, I think you could say maybe you have some explaining to do. Tell me why it took that long. That's what a presumption would do. But you don't even have to have a presumption in this case. I mean, it's 13 years. It's way beyond the eight or nine that have been at issue in other cases. So let me ask the question this way, and maybe if it's an unfair question, it's fine. It seems like the judge was upset about the fact that he felt that Sonia was introduced to him better in the middle of the trial. That's what caught his attention. And he used prosecution latches. Is there another equitable doctrine that would have addressed that misconduct? In his view, I'm not saying it is, but another equitable doctrine besides prosecution latches? There may be, but there are a bunch of equitable doctrines. For example, in equitable conduct, which is very difficult to prove, if we could prove specific intent to mislead the patent office. That wasn't required for prosecution latches. So there are a variety of equitable doctrines. We raised some equitable estoppel defenses based on what we had disclosed to Sonos. He didn't reach that. That would have to be at issue anyway. When you say you raised them when? Where? Oh, we raised them in our initial complaint. Actually, it was our answer to their counterclaims. We raised a variety of equitable defenses. The judge said he was going to take care of those after the trial, and we briefed them. The briefing is in the record. And the affirmative defense of prosecution latches was in your answer? Because it wasn't clear to me how he felt that he could address prosecution latches. Oh, yes. Because it was in your answer? Yes. Our answer to their counterclaims specifically raised prosecution latches among other defenses. So it was fine. And all these supposed procedural shenanigans, none of them applied to prosecution latches. All of that was entirely kosher because it was before the court at all times. He gave them plenty of opportunity to brief it and argue it. The only thing that they've gotten upset about is with respect to raising it at trial regarding written description and anticipation. But none of that relates to prosecution. And I'm overstaying my welcome with Judge Lord. Thank you. Closing comments. You may take up to seven minutes if you need it. Thank you, Your Honor. Just a few points. And really going in the order in which these issues came up. So first, we can win before this Court on latches for multiple reasons, even without regard to the disentanglement of the written description point in the prejudice question that you raised, Judge Prost. We can win because there's no unreasonable delay separate from the prejudice inquiry. We can win because Google was on notice and never demonstrated that it was all prejudice by what it now says was lurking in the shadows. And so there are multiple grounds on which this Court can resolve the whole case, rather than piecemeal sending it back for a new written description analysis and having that get reconsidered as to latches, which would be horribly wasteful and yield another several years of delay on reinstating a jury verdict that we won. Secondly, Judge Baum, I agree. It is remarkable that two parties stand here and cannot agree on what the district court did. I have a few responses to that. First is it doesn't matter because Google, for all it says about written description, Google never raised new matter. New matter was most certainly forfeited without regard to what the district court did on summary judgment. Second, luckily, this is an easy question for this Court to resolve. Mr. Bagatelle says it was Sonos's motion, but we had no motion on invalidity. We had no motion on written description. Let me ask a question. Is this a fair question? Sonos knew at the time that the judge rendered his summary judgment opinion that the judge was relying upon the length, the 2019 length, and really should have spoke up and said, Judge, just let the judge know. Is that a fair question? It's a totally fair question. I think the answer is that the counsel was arguing the case just did not notice until the judge raised the issue again that that one sentence was imported. What do you mean by that? What do you mean the counsel didn't notice? The counsel was arguing the motion, simply did not realize that the 5B figure that was in the patent had that description that had the added sentence. No one realized it. Google did not realize it either. Maybe I sound like I'm repeating myself. It is remarkable to me that two capable parties, one didn't realize that the judge was rendering that language. The other side didn't rely on that language, nor did the other side, nor did Google. And it's like, what's going on? Your Honor, what's going on here is classic forfeiture. If there was a there there without regard to the other five items that provide for written description that obviate any assessment of new matter, Google could have raised it. I will underscore, Google's own expert mentioned the fact of the, quote-unquote, importation of that sentence in his expert report, and still Google did not raise it. The third point I'd make about the question you asked Judge Bum about how remarkable this is, is that if Google did not realize that that's what the district court did, and just to repeat the point I was making earlier, what the district court did was to deny Google's motion. Our motion did not present an argument on validity. If Google didn't know what the consequence was of the district court's ruling, Google had the opportunity to ask the district court for clarification. It had no problem seeking reconsideration or clarification at other points. How do you respond to their argument that they were told no, they can't introduce this testimony? Your Honor, that's just absolutely false. Going into trial, I would point out that Google's pretrial brief actually mentioned that it was going to raise new matter, and then Google never proceeded to raise new matter. When Google says we were told that it would not go to the jury, what Google is pointing to is the district court saying, no, that's not going to the jury, because the case wasn't tried that way. He put it back on Google for not trying the case that way. Mr. Bagatelle admits that Judge Alsop had to decide the written description motion as a matter of law, and that he had to decide it differently if there was a dispute of fact. A single dispute of fact on this question of what the importation of this one sentence meant, a single dispute of fact as to any of the five bases on which we claim there was a written description without regard to that one sentence, there were so many disputes of fact. And I would underscore, that is not what Judge Alsop did. He starts his opinion by saying that all declaratory statements are fact findings. He made credibility findings. Yes, Your Honor, I think he may have thought that he was also disposing of the case on anticipation, but that is plainly not something a judge is allowed to do on equity. This was all really improper. A district court does not get to say, there's a new issue in the case, and I'd like to decide it. And I'd also like to decide it without giving Sonos the opportunity to present a witness. There was like literally not even depositions on this question of new matter. That is not the role of a district court judge, nor can a district court judge then proceed to make findings on his own without regard to any testimony on prosecution history. And just to underscore, if you look at the district court's opinion on this subject, the district court cites nothing but the prosecution record. He cites no witness because there was no witness on this. This new matter thing, if it was real, was something for Google to raise, and it didn't. One last point that goes to Judge Bum's question about the floodgates. I mean, applying prosecution latches here to overturn a jury verdict will upset the fundamental balance that Congress struck. All you have to do to follow this roadmap is point to six years of delay and raise some fact question about written description, which is all that this dispute was about. I think, Judge Prost, you mentioned garden variety. This was a garden variety written dispute issue. I've run written dispute issues like this as a matter of law. We've given you extra time. I think we've given you equal time. And I think the case is submitted. Thank you, Your Honor. Thank you to both counsels.